UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT MOORE, III,

                               Petitioner,

                                               Case # 21-CV-6760-FPG

v.                                             DECISION & ORDER

SUPERINTENDENT C. YEHL,

                               Respondent.

## INTRODUCTION

Pursuant to 28 U.S.C. § 2254, *pro se* Petitioner Robert Moore, III brings this habeas petition to challenge his state-court convictions for, *inter alia*, second-degree murder and attempted first-degree robbery. ECF No. 1. Respondent Superintendent C. Yehl opposes the petition. ECF No. 15. For the reasons that follow, the Court intends to dismiss the petition. Before doing so, however, the Court will give Plaintiff an opportunity to file a motion to amend his petition.

## BACKGROUND

In February 2015, Petitioner was indicted on charges of second-degree murder (intent to kill), second-degree murder (felony murder), attempted first-degree robbery, second-degree criminal possession of a weapon, and criminal possession of a firearm. ECF No. 16-2 at 34-35. The charges arose out of the fatal shooting of Justin McLaren on January 8, 2015. *Id.*

At trial, the State's theory was that Petitioner shot and killed McLaren in the course of an attempted robbery. Khori Futch—McLaren's girlfriend—testified to the events leading up to the shooting. McLaren drove Futch's car to the corner store at the intersection of Bay and McKinster Streets in Rochester, intending to sell marijuana to "someone." ECF No. 16-3 at 289-90. A few

minutes after they arrived, another vehicle parked in the vicinity of McLaren and Futch. The vehicle was "a white SUV" with tinted windows. *Id.* at 294. Futch could not see the occupants of the SUV. McLaren told Futch that he would "be right back," and he exited the car. *Id.* Futch saw McLaren walk to the passenger side of the SUV. Because she was listening to music on her iPhone, Futch did not observe McLaren enter the SUV. The next time she saw McLaren was three to five minutes later, when she saw him run back to her car. McLaren opened the front passenger door then fell to the ground. The SUV drove off towards Bay Street. *Id.* at 296. As Futch checked on McLaren, she noticed that his hoodie was ripped and he was covered in blood. A bystander called 911. Salvatore Amato, a police officer with the Rochester Police Department, was one of the first officers to respond to the shooting. *Id.* at 273. When he arrived at the intersection of Bay and McKinster Streets, Officer Amato saw a man "down on the ground and a female kind of holding him by cradling his head." *Id.* at 275. McLaren died as a result of a gunshot wound to his chest. *Id.* at 700.

Using cameras located throughout the city, investigators were able to partially reconstruct the path the white SUV took before and after the shooting. The footage showed that the SUV drove from the neighborhood in which Petitioner lived, to the intersection at which the shooting occurred, and then immediately back again after the shooting. *See* ECF No. 16-3 at 376-410, 421-37.

On January 11, 2015, Investigator David Simpson received a call from Torrence Dyck, who had previously worked as a confidential informant for police. *Id.* at 491. Dyck stated that he had information about the shooting. *Id.* at 492. Dyck testified that, earlier that day, he had learned from his cousin that "Trey" wanted Dyck to call him "about an incident that he had gotten into." *Id.* at 521. At trial, Dyck identified Petitioner as "Trey." *Id.* Dyck had a pending DWI charge

and was facing issues with his federal probation at the time he called Investigator Simpson. *Id.* at 508-09. Dyck later obtained an agreement in which he would receive dismissal of his DWI charge, and his release from federal custody on a violation of probation, through his cooperation. *Id.* at 525, 550. Dyck and the police formulated a plan to obtain incriminating evidence from Petitioner.

On January 12, 2015, Dyck arranged to meet with Petitioner. Dyck picked up Petitioner in his car, and they proceeded to discuss the shooting. Dyck recorded the discussion for police.[1] Petitioner told Dyck that he had intended to rob McLaren "for weed or jewelry." ECF No. 16-3 at 527. When McLaren got in the car, Petitioner reached to grab "his shit" and in the process, cocked "the bitch" and "the bitch went off." McLaren was able to flee from the vehicle, however. Dyck volunteered to help Petitioner get rid of the gun. They agreed to meet the next day.

On January 13, 2015, Dyck again met with Petitioner, ostensibly to help Petitioner "get[] rid" of the gun used in the shooting. ECF No. 16-3 at 493. Police had directed Dyck to have Petitioner drop off the firearm in a dumpster at a restaurant in Webster. Investigator Simpson followed Dyck as he drove to pick up Petitioner on Avenue D. *Id.* at 495. At Avenue D, Investigator Simpson observed a black man enter Dyck's vehicle, though he could not obtain a more detailed identification of the man. *Id.* at 496. At trial, Dyck confirmed that the man was Petitioner. *Id.* at 538-39. Before Dyck left, Petitioner briefly exited Dyck's car and placed the gun in a garbage bag in the trunk. *Id.* at 538. The pair drove off. As Dyck drove, Investigator Simpson was able to position his car so as to "get a good look" at the passenger. *Id.* at 497. He too identified the passenger as Petitioner.

---

[1] The audio recording, identified as People's Exhibit 20, has been manually filed with the Clerk of Court. At trial, Petitioner disputed that it was his voice on the recording. *See* ECF No. 16-3 at 768-70.

Dyck drove to the restaurant in Webster and parked in the parking lot. Dyck pulled his car behind a dumpster and told Petitioner to throw the garbage bag in the dumpster. Petitioner initially threw the gun in the dumpster without the bag, but he returned to the car and then threw the bag in as well. ECF No. 16-3 at 540. Another officer, Special Agent Patrick Hoffman with the Bureau of Alcohol, Tobacco and Firearms, recovered a Walther 7.65 millimeter handgun from the dumpster after Dyck and Petitioner left. *Id.* at 576. Later testing revealed a match between the Walther handgun and the projectile found at the scene of the shooting. *Id.* at 679-80. Dyck and Petitioner then returned to Avenue D, where Petitioner exited Dyck's car. Investigator Simpson, who was tailing Dyck's car, was again able to identify Petitioner as the passenger. *Id.* at 500.

The jury convicted Petitioner of second-degree murder (felony murder), second-degree manslaughter, attempted first-degree robbery, second-degree criminal possession of a weapon, and criminal possession of a firearm. *Id.* at 896-97. The trial court sentenced Petitioner to, *inter alia*, an indeterminate term of imprisonment of twenty years to life on the second-degree murder conviction. *Id.* at 928.

Petitioner filed a direct appeal to the Appellate Division, Fourth Department, which affirmed the convictions. *See People v. Moore*, 127 N.Y.S.3d 685 (4th Dep't 2020). Petitioner sought leave to appeal, which the Court of Appeals denied on September 29, 2020. *People v. Moore*, 35 N.Y.3d 1096 (2020) (table op.); ECF No. 16-2 at 130-32. On December 28, 2021, Petitioner filed the present action. ECF No. 1.

## LEGAL STANDARD

28 U.S.C. § 2254 allows a petitioner to challenge his imprisonment from a state criminal judgment on the ground that it is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the petitioner raises a claim that was adjudicated in state-

court proceedings, he is only entitled to relief if that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(1), (2).

"A principle is 'clearly established Federal law' for § 2254(d)(1) purposes only when it is embodied in a Supreme Court holding, framed at the appropriate level of generality." *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (internal quotation marks, brackets, and citations omitted). "A state court decision is 'contrary to' such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law or has decided a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Id.* (internal quotation marks omitted). "An unreasonable application occurs when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case, so that the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (internal quotation marks and ellipses omitted). In analyzing a habeas claim, "[f]ederal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with clear and convincing evidence." *Hughes v. Sheahan*, 312 F. Supp. 3d 306, 318 (N.D.N.Y. 2018) (internal quotation marks omitted). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Id.*

Where, as here, the petitioner is proceeding *pro se*, the district court must read the pleadings liberally and construe them "to raise the strongest arguments they suggest." *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

## DISCUSSION

Petitioner contests his convictions on three grounds. First, the State did not present sufficient evidence to convict Petitioner of felony murder or attempted first-degree robbery. Second, the trial court erroneously admitted hearsay evidence. Third, Petitioner's trial counsel—William King—provided ineffective assistance of counsel. The Court concludes that none of Petitioner's arguments merits habeas relief.

### I.    Insufficiency of the Evidence

Relying on N.Y. Criminal Procedure Law § 60.50, Petitioner contends that there was insufficient evidence to convict him of felony murder or attempted first-degree robbery. ECF No. 1 at 7; ECF No. 16-2 at 20-21. That statute provides that "[a] person may not be convicted of any offense solely upon evidence of a confession or admission made by him without additional proof that the offense charged has been committed." N.Y. C.P.L. § 60.50. Petitioner posits that the "sole evidence that there was an attempted robbery or felony murder came from [his] alleged confession during his recorded conversation with Mr. Dyck." ECF No. 16-2 at 20. Since there is "no corroboration of that confession in th[e] record," the convictions must be dismissed "as unsupported by legally sufficient evidence." *Id.* (internal emphasis omitted). The Appellate Division rejected this argument, finding that "there [was] sufficient corroboration of [Petitioner's] recorded statement." *Moore*, 127 N.Y.S.3d at 687.

Generally, habeas review does not extend to matters of state law. "According to § 2254, a federal habeas court may only consider a petition if it claims 'a violation of the Constitution or

laws or treaties of the United States.'" *Chellel v. Miller*, No. CV-04-1285, 2008 WL 3930556, at *5 (E.D.N.Y. Aug. 21, 2008) (quoting 28 U.S.C. § 2254(a)).  In other words, "federal habeas corpus relief does not lie for errors of state law, absent a corresponding violation of federal constitutional rights." *Cunningham v. Conway*, 717 F. Supp. 2d 339, 367-68 (W.D.N.Y. 2010) (internal quotation marks omitted).  Some federal courts have rejected claims for habeas relief premised on noncompliance with Section 60.50.  *See, e.g.*, *Higgins v. Colvin*, No. 16-CV-1717, 2020 WL 1289734, at *4 (E.D.N.Y. Mar. 17, 2020) ("[S]tate evidentiary rules such as the confession corroboration requirement embodied in C.P.L. § 60.50 do not trigger federal constitutional concerns."); *Kirkby v. Filion*, 644 F. Supp. 2d 299, 306 (W.D.N.Y. 2009) ("New York's confession corroboration rule is a state law requirement which embodies no federal constitutional principle.").  Nevertheless, the Court may assume, without deciding, that Petitioner's claim is one arising federal law.  *See generally United States v. Bryce*, 208 F.3d 346 (2d Cir. 1999) (discussing corroboration requirement under federal law).

Even assuming that Petitioner raises an issue of federal law, however, the Court concludes that the Appellate Division's ruling was correct.  It was undisputed at trial that McLaren was fatally shot.  Petitioner's confession that he shot McLaren was corroborated by, *inter alia*, the path travelled by the white SUV before and after the shooting, and, more importantly, by Petitioner's involvement in the abandonment of a handgun that was a match for the projectile found at the scene.  *Cf. People v. Johnson*, 911 N.Y.S.2d 713, 716 (3d Dep't 2010) (sufficient corroboration where, among other things, "[p]olice found an operable .357 Magnum handgun in the river near where defendant stated he had disposed of the murder weapon," and the medical examiner testified that the victim's wounds "were consistent with a .357 bullet").  As for the robbery, the prosecution "submitted evidence establishing that [McLaren] had met with [Petitioner] at the time of the

shooting in order to sell marihuana to [him], and that [McLaren's] clothing was torn during their brief meeting, which reflected that there was a struggle between [them]." *Moore*, 127 N.Y.S.3d at 687 (internal brackets and quotation marks omitted). This constituted sufficient evidence to corroborate Petitioner's confession. *See People v. Murray*, 40 N.Y.2d 327, 335 (1976).

Accordingly, habeas relief may not be granted on this claim.

## II.   Admission of Alleged Hearsay

Petitioner challenges the trial court's admission of alleged hearsay statements. At trial, Dyck testified that on January 11, 2015, while visiting his cousin, he learned of Petitioner's involvement in the shooting:

> Q: Did you have a conversation with your cousin at that time?
> A: Yes.
> Q: Could you describe for the jury the general nature of that conversation?

ECF No. 16-3 at 520-21. Attorney King objected to this question insofar as it called for hearsay, but his objection was overruled. *Id.* at 521. Dyck answered the question:

> A: Basically, he hold me that Trey wanted me to call him and wanted me to reach out to him about an incident that he had gotten into.
> Q: And did he give you a way to get in touch with Trey?
> A: Yes.
> Q: What did he do?
> A: Gave me his number.

*Id.* Again, Attorney King objected on hearsay grounds, but the trial court overruled the objection. *See id.*

Petitioner argues that the trial court erroneously overruled Attorney King's hearsay objections. These errors were not harmless, in Petitioner's view, because they suggested that Petitioner had reached out to Dyck for assistance, "countering [the] defense narrative that [Dyck] sought out Petitioner in order to get him to confess and thus earn benefits from the State." ECF No. 1 at 7; *see also* ECF No. 16-2 at 24 ("[The hearsay statements] bolstered the prosecutor's

narrative of the case, namely, that Mr. Moore initiated contact with Mr. Dyck (rather than the other way around) in an effort to use Dyck's supposed expertise in avoiding a murder conviction.").

Petitioner raised this issue on direct appeal.[2]  The Appellate Division rejected Petitioner's argument.  It ruled that the statements were not hearsay, in that they were "not admitted for [their] truth, but rather to complete the narrative by explaining subsequent actions taken by the witnesses, i.e., explaining how and why the police informant became involved in the investigation and how the police informant came to meet with [Petitioner] in order to record [Petitioner's] statement." *Moore*, 127 N.Y.S.3d at 688.  In his present petition, Petitioner maintains that the admission of these statements was erroneous and prejudicial.  ECF No. 1 at 7.

The Court disagrees.  Ordinarily, "errors of state evidentiary law are not cognizable on habeas review, and thus erroneously admitted hearsay statements cannot provide a basis for federal habeas relief unless the evidentiary error so undermined the fairness of the trial as to violate the petitioner's constitutional right to due process." *Sorrentino v. LaValley*, No. 12-CV-7668, 2016 WL 11482062, at *16 (S.D.N.Y. Feb. 3, 2016) (internal citation omitted).  "[I]n determining whether the introduction of a particular hearsay statement violated a petitioner's constitutional right to due process, a habeas court must conduct a two-part analysis that inquires: (1) whether the trial court's evidentiary ruling was erroneous under state law, and (2) whether the error deprived the petitioner of the constitutional right to a fundamentally fair trial." *Id.*  Petitioner cannot pass the first step.

In New York, a statement is not hearsay if it is admitted "as necessary background material and to complete the narrative of events." *Robinson v. Greene*, 507 F. Supp. 2d 279, 296 (W.D.N.Y.

---

[2] On direct appeal, Petitioner also challenged the admission of one other hearsay statement.  *See* ECF No. 16-2 at 22-24.  Petitioner does not challenge that statement in his petition, however, so the Court need not address it.  *See* ECF No. 1 at 7.

2007).   For example, in *People v. Failing*, 13 N.Y.S.3d 717 (4th Dep't 2015), the Fourth Department considered whether the trial court had improperly allowed "the hearsay testimony of the victim concerning what the neighbor told him about [the] defendant because it improperly bolstered the neighbor's testimony." *Failing*, 13 N.Y.S.3d at 719.   Specifically, the victim testified that his neighbor had told him that he had seen the defendant damage the victim's vehicle.   Brief of Appellant, *People v. Failing*, No. 11-01345, 2015 WL 13823156, at *13 (May 28, 2015).   The Fourth Department held that this testimony was not hearsay because it "was not admitted for its truth but, rather, it was properly admitted to complete the narrative by explaining when and why the victim called the police." *Failing*, 13 N.Y.S.3d at 719.

Other New York courts have reached similar conclusions regarding out-of-court statements that serve to explain why the participants in the underlying events took the actions that they did. *See, e.g.*, *People v. Tosca*, 98 N.Y.2d 660, 661 (2002) (mem. op.) ("The trial court did not abuse its discretion in admitting the police officers' testimony concerning an unidentified cab driver's report of a recent encounter with the armed defendant. The testimony was admitted not for its truth, but to provide background information as to how and why the police pursued and confronted defendant."); *People v. Piper*, 804 N.Y.S.2d 53, 54 (1st Dep't 2005) (concluding that out-of-court statement—that store security personnel "had been warned to watch [the defendant] while he was in the store because he had previously been fired from his position as a store employee"—was not hearsay because it "was not received for its truth, but to explain why the security personnel focused their attention on defendant, and to complete the narrative of events").

In light of this evidentiary rule, the Fourth Department reasonably concluded that the trial court's determination was correct as a matter of state law.   Dyck's testimony about his conversation with his cousin served to explain how Dyck—who was seemingly unconnected to Petitioner and

to the events of this case—became involved in the investigation.  It was appropriate to admit the evidence in order to give the jury "a thorough appreciation of the interwoven events" related to the investigation and of "the competing theories of what happened and why."  *People v. Till*, 87 N.Y.2d 835, 837 (1995).

Because the Appellate Division reasonably concluded that the trial court's evidentiary ruling was correct as a matter of state law, Petitioner is not entitled to habeas relief on this ground.[3] *See Sorrentino*, 2016 WL 11482062, at *16.

## III.    Ineffective Assistance of Counsel

Petitioner argues that Attorney King "demonstrated repeated examples of unpreparedness[] and an unfamiliarity with the law throughout the [criminal] process."  ECF No. 1 at 6.  Viewing his petition liberally, the Court understands Petitioner to be raising the following arguments.[4] First, Attorney King failed to present an effective defense at trial.  ECF No. 16-2 at 10-12.  Second, Attorney King failed to object to the State's prosecutorial misconduct.  *Id.* at 12-14.  Third, Attorney King failed to object when Investigator Simpson vouched for Dyck's credibility.  *Id.* at 14-15.  Fourth, Attorney King implicitly "took on the burden of proof."  *Id.* at 16-17.

---

[3] Petitioner states in passing that the trial court's error also violated his "right to confront a witness against him," though this argument is not developed either in the petition or in the briefing submitted on direct appeal.  ECF No. 1 at 7; ECF No. 16-2 at 22-24.  Regardless, the statements by Dyck's cousin to Dyck, prior to Dyck becoming involved in the police investigation, cannot be considered "testimonial" for purposes of Petitioner's rights under the Confrontation Clause.  *Cf. Rivera v. Kaplan*, No. 17-CV-2257, 2020 WL 5550047, at *17 (S.D.N.Y. July 20, 2020) ("The determinative factor for whether a declarant's statements are 'testimonial statements' for purposes of the Confrontation Clause is the declarant's awareness or expectation that his or her statements may later be used at a trial; therefore, there is no Confrontation Clause violation when a defendant cannot cross-examine a declarant whose statements were unknowingly made to an undercover informant.").

[4] The Court does not address Petitioner's allegation that Attorney King misunderstood the elements of felony murder at the charge conference.  ECF No. 16-2 at 17-19.  Petitioner does not articulate how that error was prejudicial.  *See id.*; *see also Hernandez v. Artus*, No. 09-CV-5694, 2020 WL 2769404, at *11 (E.D.N.Y. May 28, 2020) (habeas petitioner cannot establish entitlement to relief where he fails to allege "how the result of his case would have been different had" his counsel's "shortcomings been corrected").

To establish a claim for ineffective assistance of counsel under the Sixth Amendment, a petitioner must show both "(1) that counsel's representation was objectively deficient, and (2) ensuing prejudice." *Boyland v. Artus*, 734 F. App'x 18, 20 (2d Cir. 2018) (summary order); *see generally Strickland v. Washington*, 466 U.S. 668 (1984). "At the first step, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. At the second, they ask not whether counsel's error had some conceivable effect on the outcome of the proceeding, but whether it so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Boyland*, 734 F. App'x at 20 (internal quotation marks and citations omitted). Moreover, "[t]o succeed on an ineffective assistance of counsel claim" in the context of a Section 2254 habeas petition, the petitioner "must show, not that the state court applied *Strickland* incorrectly, but that the state court applied the already deferential *Strickland* standard in an objectively unreasonable manner." *Carmichael v. Chappius*, 340 F. Supp. 3d 340, 346 (S.D.N.Y. 2018). "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Id.*

### a.  Ineffective Defense

Petitioner contends that Attorney King did not present an effective defense at trial. ECF No. 1 at 6. In particular, Petitioner criticizes Attorney King's opening statement, which did not persuasively convey "any alternative explanation of who killed Mr. McLaren and who dumped the murder weapon, or why Dyck and the police would frame [Petitioner] for crimes he didn't commit." ECF No. 16-2 at 11. The Appellate Division rejected this argument, concluding that Attorney King's decision to "present a defense that largely relied on gaps in the [State's] proof" was a "matter[] of trial strategy" that could not "be characterized as ineffective assistance of

counsel." *Moore*, 127 N.Y.S.3d at 688.  "Regarding defense counsel's own opening statement," the Appellate Division determined that Petitioner's complaint "merely amount[ed] to a second-guessing of counsel's trial strategy and [did] not establish ineffectiveness." *Id.*

The Court agrees with the Appellate Division that Petitioner's argument is not meritorious, though it resolves the issue on step two of *Strickland*, rather than step one.  At step two, a petitioner bears the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Diaz*, 176 F.3d 52, 113 (2d Cir. 1999) (internal quotation marks omitted).  In the context of a challenge to defense counsel's choice of trial strategy, the petitioner must demonstrate that an alternative strategy existed that could have changed the outcome of the proceeding.  *See, e.g.*, *United States v. Eugenio*, 33 F. App'x 3, 5 (2d Cir. 2002) (summary order) (rejecting claim that defendant's counsel rendered ineffective assistance because he "employed a trial strategy that was against [the defendant's] wishes," where the defendant "present[ed] no alternative trial strategy which would allow [the court] to conclude that his counsel's chosen strategy . . . caused him prejudice"); *Diaz v. Conway*, No. 04-CV-5062, 2008 WL 2461742, at *31 (S.D.N.Y. June 17, 2008) ("Although the [chosen] defense was, no doubt, a difficult one to establish, petitioner does not identify any alternative strategy that arguably had a greater chance of success.  Simply put, defense counsel may have had no alternative available to him.  Thus, I am unable to conclude that the strategy actually employed . . . resulted in prejudice."); *Frascone v. Duncan*, No. 01-CV-5924, 2005 WL 1404791, at *4 (S.D.N.Y. June 14, 2005) ("Despite petitioner's complaint about the trial strategy utilized by his attorney, he fails to proffer any alternative strategy which would lead one to conclude that . . . the employed strategy caused prejudice to the defense."); *see also Diaz*, 176 F.3d at 113.

Neither in his briefing in state court, nor in his papers before this Court, did Petitioner offer an alternative defense strategy "which would allow [the Court] to conclude that his counsel's chosen strategy . . . caused him prejudice." *Eugenio*, 33 F. App'x at 5.  Petitioner presents no alternative strategy that Attorney King should have pursued, and it may be that Attorney King simply "had no alternative available to him." *Conway*, 2008 WL 2461742, at *31.  Indeed, the evidence against Petitioner was overwhelming: in an audio recording, Petitioner admitted to shooting McLaren, albeit accidentally, and provided details that were corroborated by other evidence in the case; Petitioner discarded a handgun at a Webster restaurant with Dyck's assistance; and the abandoned handgun matched the projectile found at the scene.  Petitioner's conclusory assertions of prejudice therefore do not merit relief.  *Accord Eugenio*, 33 F. App'x at 5.

**b.  Failure to Object to Prosecutorial Misconduct**

Petitioner next argues that the prosecutor engaged in prosecutorial misconduct at trial.  In his opening statement, the prosecutor told the jury that, after being shot, McLaren "stumbled across the street" to Futch's vehicle.  ECF No. 16-3 at 258.  Petitioner asserts that this claim was false, as Futch testified that McLaren actually "ran like he normally ran" when he exited the white SUV. *Id.* at 295.  The prosecutor also used, in Petitioner's view, "highly emotional language" to describe McLaren's death, including that McLaren used his "last dying bit of energy" to escape from the white SUV; that McLaren "fell to the cold hard pavement"; and that McLaren "died there cold, in the street." *Id.* at 258-59.  During closing argument, the prosecutor called Dyck a "hero" for his assistance in the case; emphasized the low probability that Dyck would lie in order to obtain dismissal of a low-level DWI charge; and praised Dyck for "do[ing] the right thing in this case." *Id.* at 793-94.  Petitioner contends that the prosecutor thereby "improper vouch[ed]" for Dyck's

credibility.  ECF No. 16-2 at 13-14.  Petitioner faults Attorney King for failing to object to these statements.  The Appellate Division rejected these claims, concluding that they were either "fair comment[s] on the evidence" or, in the case of the prosecutor's comments about Dyck, "fair response[s] to [Attorney King's] closing arguments."  *Moore*, 127 N.Y.S.3d at 688.  Accordingly, Attorney King did not err in declining to object to them.  *Id.*

The Court agrees with the Appellate Division.  An attorney cannot be deemed ineffective for failing to raise "meritless" objections, *United States v. Fusco*, 560 F. App'x 43, 46 (2d Cir. 2014) (summary order), and the issues that Petitioner identifies are not objectionable.

The prosecutor's opening statement stayed "within the four corners of the evidence." *People v. Ashwal*, 39 N.Y.2d 105, 109 (1976).  In the audio recording, Petitioner explained to Dyck that, immediately after he shot McLaren, McLaren used his "last little might" to "jump[] out" of the SUV and escape.  Futch testified that, as he ran back to the car, McLaren ran "like he normally ran," but then slipped and fell when he reached the passenger door to the car.  ECF No. 16-3 at 295.  By the time officers arrived, McLaren was on the ground; he "had no pulse, didn't appear to be breathing, and his eyes were rolled back in his head."  *Id.* at 275.  McLaren was pronounced dead at the scene.  *Id.* at 304-05.  Given this evidence, the prosecutor's comments did not "refer to matters not in evidence," draw "irrelevant and inflammatory conclusions," or "call upon the jury to draw conclusions which are not fairly inferable from the evidence."  *Ashwal*, 39 N.Y.2d at 109-10.  Moreover, the prosecutor was not "precluded from vigorous advocacy[] or the use of colorful adjectives." *United States v. Rivera*, 971 F.2d 876, 884 (2d Cir. 1992).

Nor did the prosecutor's remarks during closing argument constitute improper vouching. During his closing argument, Attorney King challenged Dyck's credibility, noting Dyck's past criminal activities and suggesting that Dyck may have framed Petitioner in order to receive a

beneficial deal on his pending DWI charge.  ECF No. 16-3 at 767, 769-71, 786.  In response, the prosecutor conceded that Dyck had "done some pretty bad things in his time" but that "in this case [he] is a hero."  *Id.* at 793.  The prosecutor argued it would be unlikely for Dyck—who had been previously convicted of several more serious crimes—to have gone through the trouble of elaborately framing Petitioner over a "DWI charge."  *Id.* at 794.  The prosecutor asked that the jury keep that in mind when assessing Dyck's credibility.  *Id.*  He also noted that, because Dyck had "do[ne] the right thing" by reaching out the police, the police were able to obtain Petitioner's recorded confession.  *Id.* at 803-04.

Viewed in context, the prosecutor's comments were "fair comments in response to the summation by defense counsel," rather than an improper attempt to vouch for a witness.  *People v. Williams*, 861 N.Y.S.2d 713, 714 (2d Dep't 2008).  To rebut Attorney King's claim that Dyck manufactured the case against Petitioner for his own benefit, the prosecutor suggested that the jury should view Dyck's "proactive actions" as a good faith attempt to "help solve this murder case."  ECF No. 16-3 at 794.  This was because Dyck's allegations were independently corroborated "by other witnesses," and the benefit he received would not reasonably motivate him to frame Petitioner in the manner that Attorney King claimed.  *Id.*  The prosecutor's line of argument was appropriate.  *See United States v. Arias-Javier*, 392 F. App'x 896, 898 (2d Cir. 2010) ("[W]hen the defense counsel ha[s] attacked the credibility of the government witnesses, the prosecutor is entitled to reply with rebutting language suitable to the occasion." (internal ellipsis and brackets omitted)); *see also id.* at 899 (finding that prosecutor's summation remark—that cooperating witness "told you the truth"—did not constitute improper vouching, where the remark was "clearly not the prosecutor's profession of a personal belief but, rather, a conclusion that he urged the jury to draw from the totality of the evidence").

Attorney King did not err when he failed to object to the prosecutor's comments.

### c. Investigator Simpson's Improper Vouching

On direct examination, Investigator Simpson testified that he had previously worked with Dyck as a "cooperator." ECF No. 16-3 at 491. Furthermore, on cross-examination, Investigator Simpson stated that he was "sure" Dyck would contact him again "in the future." *Id.* at 509. Petitioner faults Attorney King for failing to object to Investigator Simpson's alleged vouching for Dyck's credibility, and for affirmatively eliciting such testimony on cross-examination. ECF No. 16-2 at 15. The Appellate Division rejected this argument on the ground that Petitioner "failed to establish that there was no strategic or other legitimate reason for defense counsel's failure to object to testimony that the police informant had served as an informant previously." *Moore*, 127 N.Y.S.3d at 688.

The Court need not address whether Attorney King's actions were objectively deficient. Even if they were, Petitioner has not shown that, but for these errors, there is a reasonable probability that "the result of the proceeding would have been different." *Diaz*, 176 F.3d at 113. Although Dyck's credibility as a witness was important, it did not rest solely, or even primarily, on Investigator Simpson's "isolated and fleeting" statements about their previous (or future) work together. *Charlemagne v. Goord*, No. 05-CV-9890, 2008 WL 2971768, at *26 (S.D.N.Y. June 30, 2008). Rather, Dyck's credibility was supported primarily by the other evidence admitted at trial. The city's camera footage linked Petitioner to the white SUV and the shooting. Petitioner was heard on an audio recording describing specific details about the robbery and shooting, which details were corroborated by other evidence. And Investigator Simpson directly observed Petitioner's involvement in the abandonment of a handgun that matched the one involved in the shooting. The Court cannot conclude that, but for Investigator Simpson's comments, the result of

Petitioner's trial could have been different.  Because Petitioner has not demonstrated prejudice with respect to this alleged error by counsel, habeas relief is inappropriate.

### d.  Implicit Adoption of Burden of Proof

In summation, Attorney King highlighted the absence of forensic evidence to prove that it was Petitioner's voice on the recording:

> You can listen to the tape again.  Then they start talking.  We don't know who gets into that car.  Nobody is observing it.  No videos, no names, no nicknames.  They didn't do any DNA swabs.  They didn't do any fingerprints.  Most importantly, they didn't do any kind of voice recognition either, comparison.  There is a voice on the tape for however many minutes that was going.  No voice comparison.  The only person that you can rely on throughout, that can place Trey, who Mr. Dyck believes to be [Petitioner] in that car, is Mr. Dyck.  Nobody else can corroborate it.

ECF No. 16-3 at 769-770.  Petitioner criticizes Attorney King's reference to the absence of voice-comparison evidence.  In Petitioner's view, the jury could not have found this argument persuasive, insofar as, if Petitioner's voice were truly not on the audio recording, it would have been a "simple task" for Petitioner himself to present evidence that the voice on the recording was not his.  *See* ECF No. 16-2 at 16 (noting that "it would have been a simple task to hire someone to do a voice comparison, or even to have [Petitioner] speak a few words for the jury").  Thus, by relying on the absence of the voice-comparison evidence—rather than submitting such evidence himself— Attorney King "all but admitted that it was his client's voice on the recording."  *Id.*  Petitioner asserts that, in effect, Attorney King "implicitly took on the burden of proof and then didn't deliver," which was "the antithesis of a reasonable and legitimate strategy."  *Id.* at 17.  The Appellate Division disagreed and concluded that Attorney King's decisionmaking was a "matter[] of trial strategy" that could not be "characterized as ineffective assistance of counsel."  *Moore*, 127 N.Y.S.3d at 688.

The Appellate Division's conclusion was reasonable. The audio recording was a highly damaging piece of evidence if linked to Petitioner, but that link rested on Dyck's testimony. By highlighting the absence of other evidence to corroborate Dyck's allegation that it was Petitioner's voice on the recording, Attorney King could shift the jury's attention to Dyck's credibility, which could then be reasonably challenged on several grounds. *See* ECF No. 16-3 at 766-69. Furthermore, Petitioner's line of argument must fail because it presumes that the jury would have disregarded the trial court's instructions regarding the burden of proof. *See id.* at 832 (instructing the jury that Petitioner was "not required to prove that he is not guilty" and that the "burden of proof never shifts from the People to [Petitioner]"); *see also United States v. Brooks*, 828 F. App'x 9, 12 (2d Cir. 2020) (summary order) ("Juries are presumed to follow their instructions."). This argument does not merit relief.

## IV.    Other Claims

While briefing on this petition was ongoing, Petitioner notified the Court that he is also pursuing relief in state court. On April 14, 2022, Petitioner filed a motion for a writ of error coram nobis in the Appellate Division, Fourth Department. ECF No. 10 at 3-24. In that filing, Petitioner asserted that his appellate counsel provided ineffective assistance of counsel by failing to brief a claim—namely, that Attorney King erred by abandoning certain pretrial suppression issues. *See id.* at 15. Separately, on September 13, 2022, Petitioner filed a motion to vacate in Monroe County Supreme Court. ECF No. 22 at 1-21. In a similar vein to his other motion, Petitioner argued that Attorney King provided ineffective assistance of counsel by abandoning certain pretrial suppression issues. Petitioner further alleged that Attorney King "abandoned [him]" as a client once he learned that Petitioner could not pay him any additional money. *Id.* at 20; *see also id.* at 5. The Court has learned that on November 10, 2022, the Appellate Division denied Petitioner's

motion for a writ of error coram nobis.  *People v. Moore*, 176 N.Y.S.3d 498 (4th Dep't 2022) (mem. op.).  The record does not disclose whether Petitioner sought leave to appeal the Appellate Division's denial; nor does it disclose the status of Petitioner's motion to vacate.

Petitioner has requested that the Court consider these claims on the merits.  *See* ECF No. 10 at 1; ECF No. 20 at 1.  Because the claims raised in the above motions are not properly before the Court, the Court will not address them at this time.[5]  If Plaintiff would like to have the Court to review those claims as part of his current petition, he must first move to amend the petition to add those claims.  While the Court is willing to entertain such a motion, there are at least two obstacles that Petitioner must overcome in order for the Court to consider the above claims on the merits.

First, 28 U.S.C. § 2254(b)(1)(A) "requires a habeas petitioner to first exhaust his state court remedies with respect to each of the grounds raised in the petition," *Mejia v. New York*, No. 17-CV-6362, 2017 WL 3085843, at *1 (W.D.N.Y. July 20, 2017), and Petitioner has not shown that he has fully exhausted the claims contained either in his motion for a writ of error coram nobis or in his motion to vacate.  *See Fleming v. Noeth*, No. 17-CV-9104, 2021 WL 4272740, at *2 (S.D.N.Y. Sept. 21, 2021) ("A petitioner may exhaust a claim of ineffective assistance of appellate counsel by raising that claim to the Appellate Division on a motion for a writ of error coram nobis, and by then seeking leave from the Court of Appeals to appeal the denial of that motion."); *Daniels v. Hollins*, No. 02-CV-4495, 2006 WL 47412, at *1 n.2 (E.D.N.Y. Jan. 9, 2006) (noting that, for

---

[5] For the sake of clarification, the Court notes that Petitioner did, in fact, allege in his petition that Attorney King had unjustifiably abandoned the pretrial suppression issues.  *See* ECF No. 1 at 7.  But, as Petitioner admitted, those claims had not been properly exhausted, and, after resolving Petitioner's motion to stay, the Court deemed those claims "withdrawn."  ECF No. 21 at 3.  Therefore, those claims—while technically contained in the petition—are not presently before the Court.

purposes of a motion to vacate brought under Section 440.10, "[a] claim is fully exhausted once the Appellate Division has denied leave to appeal the denial of [the] 440.10 motion").

Second, it is unclear whether Petitioner can meet the standards necessary for amendment. Federal Rule of Civil Procedure 15 governs amendment of a habeas petition. *See Mayle v. Felix*, 545 U.S. 644, 655 (2005). That rule "allows pleading amendments with 'leave of court' any time during a proceeding." *Murray v. Noeth*, No. 21-CV-5343, 2022 WL 2116842, at *4 (S.D.N.Y. June 13, 2022). "However, this rule is limited by the one-year statute of limitations period." *Id.* "Therefore, if an amendment is filed after the statute of limitations period has expired, a new claim is untimely unless it relates back to the claims in the original, timely petition." *Id.* "An amendment relates back to the original petition if it asserts new grounds for relief based on the same conduct, transactions or occurrences as those claims in the initial petition." *Id.* "[A]n amendment does not relate back if it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Clarke v. Griffin*, No. 13-CV-4812, 2016 WL 206476, at *3 (S.D.N.Y. Jan. 14, 2016).

The Court will not *sua sponte* address these matters. Petitioner may, if he wishes to do so, file a motion to amend the petition to add his new claims. In his motion to amend, Petitioner must address the exhaustion and timeliness issues that the Court has identified.[6] His motion is due by April 16, 2023.

## CONCLUSION

For the reasons stated herein, the Court concludes that Petitioner is not entitled to habeas relief on any of his present claims, and the Court intends to dismiss the petition in its entirety. Before doing so, however, the Court grants Petitioner leave to file a motion to amend his petition

---

[6] Petitioner's motion shall be limited to his new claims; he may not seek to relitigate or re-argue the claims that the Court has already found lack merit.

to add the new claims contained in his motions to vacate and for a writ of error coram nobis. Petitioner's motion to amend is due by April 16, 2023.  If Petitioner fails to file a motion to amend by that date, his petition will be dismissed with prejudice for the reasons stated in this Decision & Order.

IT IS SO ORDERED.

Dated: March 16, 2023
      Rochester, New York

                        HON. FRANK P. GERACI, JR.
                        United States District Judge
                        Western District of New York